IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXANDER BANNERMAN,

   Plaintiff,

v.                                                                 Civil Action: SAG-24-2216

YESCARE, *et al.*,

   Defendants.

## MEMORANDUM OPINION

Plaintiff Alexander Bannerman filed this civil rights action alleging that Defendants YesCare Corp.; Dr. Andrew Moultrie; RN Daman Fayall; Shirl Stevens; Associate Director Michael Kwitkowski; Director Erin Shaffer; and Secretary Carolyn Scruggs failed to provide adequate medical care while he was housed at Patuxent Institution. ECF No. 1. The Amended Complaint is the operative pleading. ECF No. 14. Defendants Kwitkowski, Shaffer, and Scruggs (collectively, the Department of Public Safety and Correctional Services Defendants or "DPSCS Defendants") have moved to dismiss the action or, alternatively, for summary judgment to be granted in their favor. ECF No. 36. Defendants YesCare, Moultrie, Fayall, and Stevens (collectively, "Medical Defendants") have moved for summary judgment in their favor. ECF No. 39. Bannerman has not filed an opposition; rather, he has filed motions for leave to conduct discovery pursuant to Fed. R. Civ. P. 56(d). ECF Nos. 41, 42. DPSCS Defendants oppose Bannerman's motion for discovery[1] (ECF No. 43) and Bannerman has replied. ECF No. 45. Medical Defendants also oppose Bannerman's motion for discovery (ECF No. 44) and Bannerman has replied. ECF No. 46.

---

[1] In response to Bannerman's motion for leave to conduct discovery, the DPSCS Defendants filed a motion for an extension of time to file an opposition along with their opposition to Bannerman's motion. ECF No. 43. The motion for an extension of time will be granted nunc pro tunc.

No hearing is required to resolve the matters pending. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Medical Defendants' motion for summary judgment will be denied without prejudice to allow Bannerman to pursue discovery. DPSCS Defendants' motion will be denied as to Eleventh Amendment immunity for injunctive relief and for failure to exhaust administrative remedies. DPSCS Defendants' motion will otherwise be denied without prejudice to allow Bannerman to pursue discovery. Bannerman's motions for discovery will be denied without prejudice, subject to renewal by counsel, who shall be appointed to represent Bannerman in this matter.

## I. BACKGROUND

### A. Bannerman's Allegations

In his Amended Complaint, Bannerman states he is diagnosed with Crohn's Disease which when not treated causes severe pain, inflammation, bleeding, vomiting, and other symptoms. ECF No. 14 at 4. In January 2022, Bannerman was taken from Patuxent Institution to Johns Hopkins Hospital to see Dr. Sameer Khan, a stomach specialist, for assessment of his medical needs. *Id.* at 7. Dr. Khan prescribed Remicade infusions to be administered once per month. *Id.* In July 2022, Bannerman had a follow up visit with Dr. Khan but had not received any prescribed infusions by that date. *Id.* at 7-8. Dr. Khan then prescribed Remicade infusions a second time. *Id.* at 8.

In August 2022, Bannerman had still not received the prescribed Remicade infusions and was experiencing severe stomach pain, which is a symptom of Crohn's. *Id.* Bannerman reported his lack of medical treatment to Jane Stuthmann, the therapist on the Patuxent treatment team. *Id.* On or about August 12, 2022, Stuthmann sent a memo to Mr. Bannerman advising him that she

2

had "followed up with the medical department" regarding the lack of infusions.[2] *Id.* Bannerman is aware that Stuthmann emailed the medical department and DPSCS Defendants Kwitkowski and Shaffer regarding his need for and lack of medical treatment. *Id.* Over the next few months, Bannerman met multiple times with Defendant Dr. Moultrie and requested Remicade infusions, however, he was "denied." *Id.*

On January 3, 2023, Bannerman was still not receiving infusions and had a second severe flare-up of Crohn's Disease. *Id.* He filed an "informal complaint form" complaining of his illness and need for medication and hand delivered it to Lieutenant Box. *Id.* at 8-9.[3] Lt. Box advised Bannerman that she contacted the medical department each of the following three days and was unable to resolve the matter. *Id.* at 9. On January 9, 2023, Captain Williams signed Bannerman's complaint and called Bannerman to the medical department to speak with Defendants RN Fayall and Dr. Moultrie. *Id.* They told Bannerman they were "working on it." *Id.*

On April 15, 2023, Bannerman experienced a third severe Crohn's flare-up, causing him to be taken by ambulance to the hospital for treatment. *Id.* For five days, hospital staff ran tests, did an M.R.I., and administered opioids for pain and Prednisone for severe inflammation. *Id.* On May 3, 2023, Bannerman received his first Remicade infusion. Bannerman did not receive his second infusion until July 26, 2023, although he was supposed to receive it monthly. *Id.*

Bannerman alleges that throughout the relevant time period, he used the sick call procedure multiple times to request necessary medical care. *Id.* Bannerman also spoke numerous times with Defendants Dr. Moultrie and Stevenson, the appointment scheduler, about the Remicade delays

---

[2] Bannerman references an exhibit in support of this allegation. ECF No. 14 at 8. Bannerman did not file exhibits with his amended complaint and it appears he is referencing an exhibit attached to his initial complaint. *See* ECF No. 1-1 at 2.

[3] Bannerman references an exhibit in support of this allegation. ECF No. 14 at 9. It appears he is referencing an exhibit attached to his initial complaint. ECF No. 1-2.

and they failed to provide treatment and schedule transportation. *Id.* at 6, 9-10. Bannerman states that YesCare intentionally has a policy and practice to deny, restrict, or limit care to inmates to "save money" and this is "common knowledge." *Id.* at 10-11. Bannerman alleges that Defendant Scruggs, Secretary of DPSCS was well aware of YesCare's "subcare" yet she approved a contract for Corizon (YesCare).[4] *Id.* at 12. Bannerman references reports issued by the State of Maryland finding deficiencies in how the YesCare contract was monitored by DPSCS.[5] *Id.*

Bannerman alleges that the foregoing conduct violated his Eighth and Fourteenth Amendment constitutional rights. He seeks declaratory judgment, damages, and to "enjoin permanently" Defendants from preventing him from receiving timely medical care or medicine related to his serious medical condition. *Id.* at 15.

## B. DPSCS Defendants' Response

Essentially, the DPSCS Defendants contend that they had no direct involvement in decisions regarding the provision of medical care to Bannerman and cannot be held liable. ECF No. 36-1 at 8-10. They also allege that Bannerman failed to exhaust his administrative remedies because in his grievance he did not name the Defendants in this action; that the Eleventh Amendment bars recovery of damages against DPSCS Defendants in their official capacity; and that DPSCS Defendants are entitled to qualified immunity. ECF No. 36-1.

In support of their dispositive motion to dismiss the action or, alternatively, for summary judgment to be granted in their favor, the DPSCS Defendants provide the declaration of Kristina

---

[4] Chapter 11 bankruptcy proceedings were filed by Tehum Care Services, Inc. ("Tehum") d/b/a/ Corizon Health ("Corizon") in the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-90086 ("Bankruptcy Case"). It appears that YesCare is a successor entity to Corizon. *See* Bankruptcy Case, ECF No. 2014 at 43; *id.,* ECF No. 2160 at 1.

[5] Bannerman references exhibit "K" in support of this allegation. ECF No. 14 at 12. It is not clear what exhibit Bannerman may be referencing as he did not submit an exhibit labeled "K" with either his initial or amended complaint.

Donnelly, M.A., Special Assistant to the Director of Patuxent, attesting to the accuracy of Bannerman's Administrative Remedy Procedure ("ARP") documents that are attached (ECF No. 36-3); the declaration of F. Todd Taylor, Jr., Executive Director of the Inmate Grievance Office (IGO) which is both undated and unsigned, attesting to the accuracy of Bannerman's documents related to his grievance filings that are attached (ECF No. 36-4); and one page of Bannerman's certified medical records dated November 13, 2024, stating that symptoms of his Crohn's Disease are controlled with monthly Remicade infusions. ECF No. 36-5.

The documents indicate that Bannerman's ARP was received on April 24, 2023 by the Administrative Remedy Office, prior to his first Remicade infusion on May 3, 2023. ECF No. 36-3 at 3. In his ARP, Bannerman states that Stuthmann emailed the medical department multiple times and received email in response. *Id.* at 3-4. Bannerman also states that he spoke to Lieutenant Fox and Captain Williams to resolve his medical issues. *Id.* at 4. The ARP investigation, dated May 25, 2023, concluded that Remicade infusions were delayed while "medical" was "awaiting arrangements" from John Hopkins concerning the infusions. ECF No. 36-3 at 7-9. On June 9, 2023, the Warden found the ARP meritorious, confirming that there had been an outstanding order for Remicade, that Bannerman was "seen and monitored" during the delay to ensure there were no adverse reactions while medication was not received, and Bannerman was instructed to use the sick call process for further care. ECF No. 36-3 at 7.

Bannerman pursued the grievance process and eventually filed a grievance with the Inmate Grievance Office ("IGO"). ECF No. 36-4 at 1. The IGO interpreted the grievance as solely against the independent medical provider, not against a DPSCS Division of Correction official or employee, and dismissed the grievance for lack of jurisdiction over private contractors. *Id.* at 1-2. Bannerman then filed a petition for judicial review in the Circuit Court for Howard County,

Maryland that was remanded to the IGO for clarification as to whether any DPSCS officials were named in the original ARP. *Id.* at 2. On remand, the IGO confirmed that Patuxent officials were named in the ARP, namely Captain Williams, Lieutenant Fox, and Jane Stuthmann, but there was no basis to find the DPSCS officials named in the ARP responsible for the medical decisions made by the DPSCS private medical contractor. *Id.* at 2, 4-5.

**C. Medical Defendants' Response**

In support of their motion for summary judgment (ECF No. 39-1), the Medical Defendants provide the declaration of Defendant Dr. Andrew Moultrie (ECF No. 39-2), along with Bannerman's certified medical records (ECF Nos. 39-3 – 39-24); the declaration of Defendant Damon Fayall, RN (ECF No. 39-25); and the declaration of Defendant Shirl Stevens. ECF No. 39-26.

The Medical Defendants assert that there is no evidence that YesCare had a custom or policy to deny medical treatment to save money (ECF No. 39-1 at 27-28), Dr. Moultrie did not deny Bannerman Remicade infusions and instead requested them on multiple occasions (*id.* at 28-29), RN Fayall was a medical supervisor with no direct involvement with Bannerman and when he became aware of the delays caused by the outside provider, he made efforts to find an alternative provider (*id.* at 29-30), and that Stevens could not arrange an outside appointment for Bannerman to receive infusions without cooperation from the outside provider (*id.* at 30). Collectively, the Medical Defendants assert that the delay in providing infusions was entirely out of their control and instead caused by the outside provider, and that they acted within the scope of their duties to secure the infusions for Bannerman.

## II.  STANDARD OF REVIEW

As permitted by Rule 12(d) the DPSCS Defendants seek dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56 and have submitted declarations and other documents with their motion. ECF Nos. 36, 36-1, 32-3 to 32-5.  The Medical Defendants seek solely summary judgment and also have submitted declarations and other documents with their motion.  ECF Nos. 39, 39-1 to 39-26.

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Anderson*, 477 U.S. at 247–48 (emphasis in original).  The Court must view the evidence in the light most favorable to the nonmoving party,

*Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

DPSCS Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because DPSCS Defendants filed their motion styled as a motion to dismiss, or in the alternative, for summary judgment, Bannerman was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "where matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment" under Rule 12(d) as long as all parties "have a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-245 (4th Cir. 2002). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion

when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

In response to each of Defendants' motions, Bannerman argues that it is premature to resolve their dispositive motions as he has not had the opportunity to engage in discovery, and he has provided the requisite declarations in support of his requests pursuant to Fed. R. Civ. P. 56(d). ECF Nos. 41, 42.

### III. Analysis

#### A. DPSCS Defendants

Prior to addressing Bannerman's motion for discovery, the Court will address DPSCS's defense that Bannerman failed to exhaust his administrative remedies and that the Eleventh Amendment bars claims against them in their official capacity.[6]  ECF Nos. 36-1 at 7-8, 10-11.

Eleventh Amendment Immunity

Bannerman brings claims against each DPSCS Defendant in both their individual and official capacity and seeks damages and injunctive relief relating to his timely receipt of medical care. ECF No. 14 at 15. Defendants, however, assert that Bannerman's claims against them are solely for monetary damages and the Eleventh Amendment therefore bars his claims against them in their official capacity. ECF No. 36-1 at 7-8.

The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of

---

[6] As discovery will proceed, the Court declines to assess Defendants' assertion of qualified immunity from Bannerman's claims. *Id.* at 14-15. The Court finds unresolved issues of material fact that pertain to the personal involvement of the DPSCS Defendants in the delay in providing medical care. At this juncture, such factual disputes preclude the application of qualified immunity. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Bannerman's claims for monetary damages against the Defendants may proceed against them in their individual capacity but not in their official capacity.

Bannerman's claims against Defendants in their official capacities for injunctive relief may also go forward. The Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123 (1908), "permits citizens to sue state officials to enjoin the enforcement of unconstitutional laws," creating "an exception to the general constitutional command that federal courts do not have jurisdiction over suits by citizens against the states." *Lyle v. Griffith*, 240 F.3d 404, 412 (4th Cir. 2001).

<u>Exhaustion of Remedies</u>

Defendants raise the affirmative defense that Bannerman failed to exhaust administrative remedies because he did not name Kwitkowski, Shaffer, or Scruggs in his Request for Administrative Remedy ("ARP") and instead identified the "medical department" as the source of the alleged problem. ECF No. 36-1 at 10-11. The Court disagrees that Defendants have demonstrated a failure to exhaust, for multiple reasons.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for,

violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Defendants assert that the ARP investigation "identified no wrongdoing by correctional staff or administrative personnel." ECF No. 36-1 at 11 citing ECF No. 36-3 at 7-9. This statement, taken in context, is unpersuasive. The record shows that the ARP investigation does not attribute

blame to any particular party and is silent on who was at fault in the delay in providing medical treatment, but found the ARP to be meritorious. *Id.*

In addition, the records provided by the Inmate Grievance Office are incomplete, further hampering the exhaustion defense. First, the Declaration that accompanies the records is in the name of F. Todd Taylor, Jr., Executive Director of the IGO, but the Declaration is undated and unsigned. ECF No. 36-4 at 3. Further, while Defendants contend that Bannerman's complaint was against YesCare only, they have not provided Bannerman's appeal to the Commissioner or his IGO grievance and the documents are not otherwise part of the record. *Id.* at 5.

Finally, the record shows that Bannerman stated in his ARP that he spoke with various individuals employed by DPSCS (Stuthmann, Lieutenant Fox, and Captain Williams) to try to resolve his medical issue. ECF Nos. 36-3 at 4, 36-4 at 3-4. Clearly, the issue was not resolved when he filed his ARP. ECF No. 36-3 at 3-4. The Defendants provide no citation or legal analysis to support their assertion that Bannerman is required to name the very Defendants in his grievance that he names in his federal litigation in order to properly exhaust administrative remedies. ECF No. 36-1 at 10-11. There is no such provision in the Prison Litigation Reform Act and all that is required is that the prisoner comply with the grievance procedure. *See Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008) citing *Jones v. Bock*, 549 U.S. 199, 217-19 (2007). The only legal authority cited by Defendants in support of their argument is Md. Code Ann., Correctional Services § 10-206(a), which provides simply that a prisoner may file a grievance against an official or employee of the Division of Correction by submitting a complaint to the Inmate Grievance Office within the "time and manner required by the regulations adopted by the Office." Based on the record presented to the Court, Defendants have not met their burden of proof that Bannerman has

failed to comply with exhaustion. The motion to dismiss for failure to exhaust administrative remedies will be denied.

Discovery Request

In his Declaration in support of his request for discovery against the DPSCS Defendants, Bannerman states that he is seeking specific information about the extent of personal knowledge that Kwitkowski, Associate Director, and Shaffer, Director, had regarding his medical needs in light of the communications that therapist Stuthmann relayed to them. ECF No. 41-1. Bannerman seeks written communications between Stuthmann and Kwitkowski and Shaffer, to depose Stuthmann, and to seek admissions from Shaffer and Kwitkowski. *Id.* Bannerman states this information is essential in determining whether these Defendants were aware of his medical needs and the risk of harm caused by lack of treatment. *Id.* at 2.

The Defendants counter that Bannerman does no more than allege that Kwitkowski and Shaffer were aware of his medical condition and not that they had any role related to providing medical treatment. ECF No. 43. Bannerman's reply elaborates on the duties of Defendants Kwitkowski and Shaffer. ECF No. 45. He states that Maryland law designates the Director (Shaffer) as the Chief Administrative Officer of the Institution with the responsibility to manage and supervise the institution and implement its programs and services. *Id.* at 2-3. *See* Md. Code Ann., Corr. Servs., § 4-203. He also states that the position of Associate Director (Kwitkowski) is charged with assisting the Director in operating the facility. Bannerman concludes that if he is denied discovery, he will be unable to respond to the DPSCS Defendants' assertion that they do not bear responsibility for his medical care. He is seeking to establish that Defendants knew of his medical condition and risk of harm, it was within their duties to assure that he received appropriate medical care, yet failed to take action to assure that he receives necessary medical care. The Court agrees

14

that Bannerman should be provided with an opportunity to pursue discovery for this purpose. *See West v. Atkins,* 487 U.S. 42, 56 (1988), "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."

**B. Medical Defendants – Discovery Request**

In his request for discovery against the YesCare Defendants, Bannerman is seeking information regarding the delivery of medical care by YesCare and its employees, including for referral to outside providers. ECF No. 42-1. Bannerman requests: (1) policies and procedures governing referrals to outside specialists and providers; (2) handling of delays in/to specialist appointments; (3) contingency procedures if the contacted provider is unavailable; (4) administrative and contractual issues that would preclude reaching out to an alternate provider; (5) whether DPSCS inmates are sent to the University of Maryland Medical System ("UMMS") for infusions for GI issues and if so, how long DPSCS has been sending inmates there; (6) internal audits, reviews, or reports on delays in specialty care referrals; (7) documents showing whether YesCare/Corizon was permitted or restricted to use only one provider for this specific type of specialty care; (8) how referrals are tracked and monitored; (9) appointment scheduler duties, responsibilities, and authority; (10) HSA duties, responsibilities, and authority; (11) records of prior complaints, grievances, ARPs, and lawsuits alleging denial of medical care; (12) internal investigations or corrective actions taken in response to complaints of delayed care; (13) policies on substituting maintenance or alternative treatments during delays; and (14) when did Utilization Management approve UMMS treatment and who approved it. ECF 42-1 at 1-2. Bannerman states that the discovery is essential to establish that the Medical Defendants were aware of a serious risk to his health, had authority to take corrective action, and failed to do so. *Id.* at 2.

In response, the YesCare Defendants argue that even if the requested discovery was provided, it would not change to outcome of the legal arguments presented. ECF No. 44 at 3-4. Defendants assert that Dr. Moultrie and RN Fayall took multiple steps to assist Bannerman in getting needed care, Stevens did not have scheduling authority without the cooperation of an outside provider, and YesCare never denied Bannerman his prescribed infusions. *Id.* They argue that for these reasons, Bannerman cannot meet the deliberate indifference standard required for his constitutional claim. *Id.*

The Court disagrees with the Medical Defendants' assertion that discovery is not necessary to resolve the claims. Bannerman alleges that, for a period of approximately 16 months, he did not receive prescribed medical treatment, causing him to suffer three bouts of serious illness, including one hospitalization. His allegations include a claim that there was a systemic deficiency that caused an extreme delay in his receipt of outside medical treatment for a serious medical illness. He seeks to determine the cause of the delay and the respective responsibilities of the YesCare Defendants. Bannerman has articulated both the basis for his need for discovery and how the requested discovery will assist him in creating genuine issues of material fact. Bannerman will be provided with an opportunity to pursue discovery for this purpose.

## IV.  APPOINTMENT OF COUNSEL

In light of the foregoing, the Court assesses Bannerman's need for counsel. [D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity

and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted).

The Court determines that Bannerman has presented such exceptional circumstances. Bannerman is presently incarcerated. He is seeking significant discovery on the responsibilities of the respective Defendants for the delay in his receipt of necessary medical treatment for a serious medical illness. Based on Bannerman's filings to date, the nature of the claims, and the need for discovery, the Court determines that exceptional circumstances exist that warrant the appointment of an attorney to represent Bannerman under 28 U.S.C. § 1915(e)(1). Bannerman's motions for discovery will be denied without prejudice, subject to discovery requests being served by assigned counsel.

## V.  CONCLUSION

For the foregoing reasons, the Medical Defendants' motion for summary judgment will be denied without prejudice to allow Bannerman to pursue discovery. DPSCS Defendants' motion will be denied as to Eleventh Amendment immunity for injunctive relief and failure to exhaust administrative remedies. DPSCS' motion will otherwise be denied without prejudice, to allow Bannerman to pursue discovery.

Bannerman's motions for discovery will also be denied without prejudice, subject to the service of discovery requests by counsel, who shall be appointed to represent Bannerman in this matter.

An Order follows.

DATED: January 7, 2026                             /s/
                                      Stephanie A. Gallagher
                                      United States District Judge